UNITED STATES *v.* ELEVEN HORSES.

(*Circuit Court, D. Indiana.* June 2, 1887.)

CUSTOMS DUTIES—EXEMPTIONS—ANIMALS FIT FOR BREEDING.

In a proceeding to forfeit 11 stallions and a jack, the information charged that certain Canadians were engaged in importing animals from Canada for sale; that they were not engaged in breeding or raising animals; and that they caused certain citizens of Indiana to make their affidavit to the collector of customs that they were the owners of the animals, and had imported them expressly for breeding purposes, when in fact the animals were the property of the Canadians, who imported them for sale and profit. *Held,* that the fact that the animals were fit for breeding purposes did not entitle the importers to exemption from customs duties, under the act of congress of March 3, 1883, (22 St. at Large, 503,) exempting from duty animals specially imported for breeding purposes, if the animals were in fact imported for sale, and that the information sufficiently charged an offense against the customs laws.

*Emory P. Sellers,* U. S. Dist. Atty., and *Graham H. Harris,* Asst. Dist. Atty., for appellants.

*Harrison, Miller & Elam,* for appellee.

GRESHAM, J. This is a proceeding to forfeit to the United States eleven stallions and one jack, for violation of the customs laws. The information is inexcusably long, but it charges, in substance, that Albert and Wesley Fansom, of Toronto, were engaged in importing animals into the United States from Canada and other foreign countries for sale; that they were not engaged in breeding or raising animals; that in February, 1887, they caused Henry Quince and Scott Galloway, citizens of Indiana, to make and present to the collector of customs at Port Huron their affidavit, stating that they were the owners of the animals, and had imported them into the United States expressly for breeding purposes, when, in truth and in fact, the affiants did not own the animals, but they were the property of the Fansoms, who did not import them for breeding purposes, but for sale and profit; and that the Fansoms thus succeeded in having the animals entered at Port Huron free, although they were subject to duty, thereby defrauding the United States of the revenue due thereon.

The Fansoms, as claimants, excepted to the information, on the ground that the facts charged did not amount to a violation of the customs laws, and did not, therefore, entitle the United States to a forfeiture of the property. The district court sustained the exceptions, and dismissed the libel, from which decree the United States appealed.

By Schedule G, subsec. 252, act of March 3, 1883, (22 St. at Large, 503,) the duty on live animals is 20 per cent. *ad valorem;* and by subsection 642 of the same act it is provided that "animals specially imported for breeding purposes shall be admitted free, upon proof thereof satisfactory to the secretary of the treasury, and under such regulations as he may prescribe." 22 St. at Large, 517.

Article 386 of the regulations promulgated by the secretary of the treasury on July 1, 1884, reads as follows:

"For the admission of the free entry of animals, when imported for breeding purposes, there shall be produced to the collector at the port of importation a certificate from the United States consul at the port of shipment, (or a bond given in a sum equal to value,) showing that the animals are, to the best of his information and belief, especially intended for such purposes, and also a *statement of the owner, under oath,* that they were imported from abroad into the United States especially for breeding purposes."

Section 12 of the act of June 22, 1874, (18 St. at Large, 186,) provides that any owner, importer, consignee, agent, or other person who shall, with intent to defraud the revenue, make, or attempt to make, any entry of imported merchandise by means of any fraudulent or false invoice, affidavit, letter, or paper, or by means of any false statements, written or verbal, or who shall be guilty of any willful act or omission, by means whereof the United States shall be deprived of the lawful duties accruing upon such merchandise, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper, or statement, or affected by such act or omission, shall, for each offense, be fined in any sum not exceeding $5,000, nor less than $50, or imprisoned for any time not exceeding two years, or both, and, in addition to such fine, such merchandise shall be forfeited, etc.

All live animals imported into the United States are liable to a duty of 20 per cent. *ad valorem,* unless they are brought in for a period, not exceeding six months, for exhibition or competition for prizes offered by agricultural or racing associations; or are brought by persons emigrating from foreign countries to the United States with their families, and in actual use for that purpose; or unless they are specially imported for breeding purposes. It is only animals brought in for the three specified purposes that are placed upon the free list, (22 St. at Large, 517,) and before they can be entered free, proof must be made, in compliance with the regulations prescribed by the secretary of the treasury, showing that they are not liable to duty.

"A statement of the owner, under oath, that they were imported from abroad into the United States expressly for breeding purposes," is required as a condition precedent to the free entry of animals of that class. The sworn statement in this case was made by Quince and Galloway, and not by the owner, and the animals were not imported expressly for breeding purposes, but for speculation. The regulation in question was reasonable and necessary for the protection of the government against fraud. Exemption from duty is the exception, and the Fansoms were obliged to show, by a truthful statement of their own, or of some one

authorized to act for them, under oath, that they were entitled to enter the animals free. While the statute was doubtless enacted in the interest of breeders, and for the purpose of improving the stock of the country, and thus increasing its wealth, it will not bear the construction contended for by the counsel for the claimants. It does not say that all animals, male or female, fit for breeding, or capable of breeding, may be entered free. If that had been the intention of congress, why use the words, "animals specially imported for breeding purposes?" It would be as unfair to the government to give it the construction claimed as it would be to importers to say that, having once in good faith entered animals free by making the required proof, they may not thereafter sell them. The statute is satisfied when the owner in good faith imports animals expressly for breeding; and he is thereafter at liberty to change his mind, and sell them, or use them as if they had never been imported. *United States* v. *One Hundred and Ninety-six Mares*, 29 Fed. Rep. 139.

If the charges in the information are true, the claimants caused a false affidavit to be made and presented to the collector, and succeeded in having their animals entered free as the property of others, when they were subject to duty, and thereby defrauded the government of its just revenue.

The judgment of the district court is reversed, with instructions to overrule the exceptions to the information.

HARLAN, J., concurs.